UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

MARIA ALVES
    Plaintiff,

v.                      CIVIL ACTION NO. 05CV10352 RCL

PAUL F. WALSH, JR.,
DISTRICT ATTORNEY AND
THE CITY OF FALL RIVER
    Defendants,

MARIA ALVES' OPPOSITION AND MEMORANDUM OF LAW TO
DEFENDANT'S MOTION TO DISMISS AND REQUEST FOR ORAL ARGUMENT

Maria Alves opposes the Motion to Dismiss filed by the defendant Paul F. Walsh, Jr. (Walsh) and submits the following legal reasons why the plaintiff's complaint should not be dismissed.

Denial should be based on three grounds. First, Walsh is not entitled to absolute immunity or qualified immunity for his role in this claim since the conduct for which the plaintiff complains was the result of Walsh's administrative or investigative actions rather than his function as an advocate. Second, Walsh's entitlement to immunity depends upon whether he has exceeded his statutory or constitutional limitations. Since he had no discretion to prevent Maria Alves from defending her claim to the property and since he took action which resulted in a constitutional deprivation of her rights he has exceeded his limitations and he is stripped of immunity. Third, Walsh is liable to Maria Alves for his role as an administrator who is responsible to train and supervise his

assistants. As to Count II, the claim against the Fall River Police Department remains a viable §1983 claim and Walsh is a necessary party for the resolution of that claim.

## Walsh as a Party Defendant

Walsh is named as a defendant who is personally liable to Maria Alves for his actual conduct, whether such results from his participation in the forfeiture or for his training and supervision of his assistants. The indication that he acts in official capacity is only offered to establish the issue that he is a prosecutor who normally enjoys some type of immunity for his acts.

Since Maria Alves is not yet able to discover the identities of the assistants in Walsh's office who have performed the acts which have deprived her of her property she can only identify Walsh as a liable party.[1] Maria Alves anticipates that she will move to amend her complaint after the resolution of the immunity issue and she will name Walsh's assistants as discovery identifies the role each assistant has performed in the claim. For purpose of resolving the immunity issue Walsh is named as the nominal party.

## Walsh's Burden to Prove Entitlement to Immunity

Attention is directed to Walsh's burden to prove his entitlement to immunity in this matter. Officials who "seek absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an

---

[1] As an example of the limited information known at this point it appears that the motion to forfeit was signed by Assistant District Attorney Gerald T. Fitzgerald. Since there is no transcript of the motion hearing and since Maria Alves was not a party to anything connected with the motion it is unknown whether Mr. Fitzgerald was the assistant who performed other functions relative to the motion. It may be developed that Mr. Fitzgerald was only engaged in advocacy and his role was to present the motion and obtain an order of forfeiture from the Bristol County Superior Court.

exemption of that scope." *Butz v. Economou*, 438 U.S. 478, 506 (1978). *Harlow v. Fitzgerald*, 457 U.S. 800, 808, (1982) *Malley v. Briggs*, 475 U.S. 335, 340 (1986). The Court in *Harlow* examined how this burden might be met. First the claimant must display that the responsibilities of the claimant's office embrace a function so sensitive as to require a total shield from liability. The claimant must then demonstrate that he was discharging the protected function when performing the act for which liability is asserted. *Harlow*, 457 U.S. 800, 812. In his Motion to Dismiss, Walsh cites many legal authorities but he does not carry the burden of showing that the facts involved with any particular functions entitle him to absolute or qualified immunity. In his Motion, Walsh provides no concise statement of material facts. Maria Alves provides her own concise statement of material facts in addition to the allegations pled in her complaint.

### A Brief History of Immunity

*Imbler v Pachtman*, 424 U.S. 409 (1976) is the beginning of several rulings by the Supreme Court on the issue of absolute immunity afforded to state prosecutors such as Walsh. Prior to concluding that prosecutors "enjoy absolute immunity from [§] 1983 suits for damages <u>when he acts within the scope of his prosecutorial duties</u>" the Court recognized the important policy considerations for the criminal justice system. (Emphasis added) *Imbler*, 424 U.S. 409, 431:

> "The ultimate fairness of the operation of the system itself could be weakened by subjecting prosecutors to [§] 1983 liability. Various post-trial procedures are available to determine whether an accused has received a fair trial. These procedures include the remedial powers of the trial judge, appellate review, and state and federal post-conviction collateral remedies. In all of these the attention of the reviewing judge or tribunal is focused primarily on whether there was a fair trial under law. This focus should not be blurred by even the subconscious knowledge that a post-trial decision in favor of the accused might result in the

3

prosecutor's being called upon to respond in damages for his error or mistaken judgment." *Imbler,* 424 U.S. 409, 427.

The *Imbler* Court limited its holding to a prosecutor's advocate functions and not to those functions which cast the prosecutor in the role of an administrator or investigative officer. *Imbler*, 424 U.S. 409, 431.

In *Burns v. Reed*, 500 U.S. 478 (1991) the plaintiff was the subject of a criminal action initiated by the prosecutor. The plaintiff complained of two functions for which absolute immunity should have been denied to the prosecutor. With regard to the improper request for a search warrant in a probable cause proceeding it was held that redress would be denied because it was conduct was "intimately associated with the judicial phase of the criminal process." Quoting from *Imbler,* 424 U.S. 409, 430. The Court observed that each of the allegations of prosecutorial misconduct were committed within the prosecutor's performance relating to advocacy in the criminal charge. It was also recognized that "the judicial process is a check on prosecutorial actions at a probable cause hearing." *Burns*, 500 U.S. 478, 492. Safeguards in the judicial system such as the supervision by a judicial officer and appeal rights are additional resources available to an aggrieved person in the criminal process. Citing: *Butz v. Economou*, 438 U.S. 478, 512.

Of note was the dissenting justices' opinion that the improper procurement of a search warrant was not a traditional function of a prosecutor to be protected with absolute immunity. *Burns*, 500 U.S. 478, 504. The dissents' reasoning was based upon the fact that the act of procuring a warrant was too far removed from the judicial phase of the criminal proceedings to warrant the protection of absolute immunity. *Burns*, 500 U.S. 478, at 505.

4

With regard to the second function examined the Court denied the prosecutor the protection of absolute immunity for the prosecutor's role in giving advice to the police. The Court recognized that the giving of advice was not "so 'intimately associated with the judicial phase of the criminal process,' (quoting from Imbler, 424 U.S. 409, 430) that it qualifies for absolute immunity." *Burns*, 500 U.S. 478, 493. A review of the historical origins of immunity indicated there was no common law support for the extension of immunity in investigative functions.

The Court also examined the threat of vexatious litigation as justification for extending absolute immunity for investigative type conduct. Holding that even with the risk of burdensome litigation:

> "the concern with litigation in our immunity cases is not merely a generalized concern with interference with an official's duties, but rather is a concern with interference with the conduct closely related to the judicial process. [*Forrester v. White*, 484 U.S. 219, 226] [*Imbler*, 424 U.S. 409, 430] Absolute immunity is designed to free the judicial process from the harassment and intimidation associated with litigation. *Forrester*, 484 U.S. 219, 226. That concern therefore justifies absolute prosecutorial immunity only for actions that are connected with the prosecutor's role in judicial proceedings, <u>not for every litigation-inducing conduct.</u> (Emphasis added) *Burns*, 500 U.S. 478 at 494.

The Court recognized that "[a]s the qualified immunity defense has evolved, it provides ample support to all but the plainly incompetent or those who knowingly violate the law. [citing: *Malley*, 475 U.S. 335, 341 and Mitchell v. Forsyth, 472 U.S. 511, 524] Although the absence of absolute immunity for the act of giving legal advice may cause prosecutors to consider their advice more carefully, "`[w]here an official could be expected to know that his conduct would violate statutory or constitutional rights, he

should be made to hesitate.'" [Quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)] *Burns*, 500 U.S. 478 at 494-495.[2]

In *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) a plaintiff sought damages from prosecutors who allegedly fabricated evidence during the preliminary investigation of a crime and made false statements related to the crime at a press conference. The Supreme Court followed the functional examination of the conduct. The Court held:

> "There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. [When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'] *Hampton v. Chicago*, 484 F.2d 602,608 (CA7 1973) Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he 'has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.' 484 F. 2d, at 608-609." *Buckley*, 509 U.S. 259, 273.

In *Buckley* the Court confirmed "[A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.]" *Buckley*, 509 U.S. 259, 274. Since the prosecutor took the complained of action before he had probable cause to arrest, he was not shielded by absolute immunity.

Regarding the prosecutor's act in holding a press conference it was held that such a conference was not part of the function of an advocate and the prosecutor's actions with

---

[2] In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), absolute immunity was not extended to officials for their offending conduct but the Court recognized that qualified immunity could also bar a plaintiff's claims. Qualified immunity is established for government officials performing discretionary functions. These officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. 800, 818.

6

respect to the press conference were also not shielded by absolute immunity. *Buckley*, 509 U.S. 259, 276-277.

In *Malley v. Briggs*, 475 U.S. 335 (1986) the Court considered whether to grant absolute or qualified immunity to a police officer who allegedly caused the unconstitutional arrest of the plaintiffs. Acknowledging that absolute immunity applied to functions intimately associated with the judicial phase of the criminal process (citing *Imbler*, 424 U.S. 409, 430) the Court stated that an officer applying for a warrant "while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than the act of a prosecutor seeking an indictment. *Malley*, 475 U.S. 335, 342-343. Only qualified immunity was extended to the officer applying for a warrant with the following rationale:

> "We do not believe that the [qualified immunity] standard, which gives ample room for mistaken judgments, will frequently deter an officer from submitting an affidavit when probable cause to make an arrest is present. True, an officer who knows that objectively unreasonable decisions will be actionable may be motivated to reflect, before submitting a request for a warrant, upon whether he has a reasonable basis for believing that his affidavit establishes probable cause. But such reflection is desirable, because it reduces the likelihood that the officer's request for a warrant will be premature. Premature requests for warrants are at best a waste of judicial resources; at worst, they lead to premature arrests, which may injure the innocent or, by giving the basis for a suppression motion, benefit the guilty. *Malley*, 475 U.S. 335, 343-344.

*Kalina v. Fletcher*, 522 U.S. 118 (1997) involved facts similar to the facts in *Malley* yet now it was a prosecutor who improperly sought the arrest warrant rather than a police officer. The Court held that absolute immunity would have been extended to the prosecutor's actions in requesting the warrant but for her act of certifying the application; an act which transformed her function to be a complaining witness rather than an

7

advocate. It was simply determined that the prosecutor could have been acting as an advocate at the stage of the proceeding when the arrest warrant was requested but since she also certified the documents in support of the warrant immunity was not extended.

### Function Rather than Identity of the Actor

In *Cleavinger v. Saxner*, 479 U.S. 193 (1985) the Court held that it is not the rank or title of an official but the function and responsibilities of the individual official which determines whether absolute immunity is to be extended to limit liability. In this case, absolute immunity was denied for members of a prison disciplinary committee who took action against an inmate. The Court recognized that although the committee members seemed to perform an adjudicatory function there were few safeguards that are present in traditional judicial process. After considering the beneficial reasons for extending the protections of qualified immunity to these officials the Court then suggested "these concerns, to the extent they are well grounded, are overstated in the context of constitutional violations. *Cleavinger*, 479 U.S. 193 at 203. It was the lack of safeguards that moved the Court to limit the committee members' protection to a defense of qualified immunity. "[I]t is not unfair to hold liable the official who knows or should know he is acting outside the law, and . . . insisting on an awareness of clearly established constitutional limits will not unduly interfere with the exercise of official judgment." [citing: *Butz v. Economou*, 438 U.S., at 506 -507] *Cleavinger*, 479 U.S. 193, 207.

The Court has not been concerned with the title of the official when the act which gives rise to liability has been performed. In *Forrester v. White*, 484 U.S. 219 (1988) The Court examined the role of a state court judge in the firing of a subordinate. The judge claimed he was absolutely immune from a suit seeking redress for the firing. The

8

Court held that the judge's actions were not judicial acts for which he could enjoy absolute immunity.

Therefore, if a prosecutor applied for an arrest warrant as did the police officer in *Malley*, the prosecutor could only claim qualified immunity for his action. When Walsh presented the Order of forfeiture to the Bristol County Savings Bank that presentment is analogized to an arrest warrant. (See: *Schrob v. Catterson*, 948 F.2d 1402, 1416 (Third Circuit, 1991))[3] It is clear that Walsh never contemplated a judicial forfeiture proceeding involving Maria Alves' interest in the accounts so the presentment of the Order to the Bristol County Savings Bank cannot be deemed to be a part of any advocacy or the commencement of any judicial proceeding. Walsh's conduct makes clear the fact that he was taking the money from the bank on the basis of the Order of Forfeiture obtained against Jason Alves, in total disregard for the rights of Maria Alves. A reasonably competent assistant district attorney would know that Maria Alves had an ownership interest in the accounts; that her rights in the accounts were not adjudicated in the forfeiture motion against Jason Alves and that the presentation of the Order would deprive Maria Alves of her property without due process.

*Schrob v. Catterson*, is a Court of Appeals case that involved a claim for deprivation of rights by innocent party. Unlike the case at bar, the deprivation in *Schrob* occurred during the prosecutor's advocacy in a judicial process. Absolute immunity was imposed for the advocacy functions by the prosecutor and the Court of Appeals recognized that the innocent party had remedies within the judicial proceeding and was

---

[3] In *Schrob* the seizure warrant was presented at the commencement of the judicial process and was held to be within the sphere of function protected by absolute immunity. In the case at bar, Walsh presented the equivalent of an arrest warrant long after the advocacy of the process was concluded with Jason Alves and prior to the commencement of any advocacy or judicial process against Maria Alves.

9

able to utilize those remedies to recover the property for which the innocent party had been deprived. Regardless of the innocent party's recovery of the property, immunity in *Schrob* was denied to the prosecutor for his role in post advocacy functions; functions similar to the functions complained of by Maria Alves.

*Butz v. Economou*, 438 U.S. 478 (1978), was a case related to the extension of immunity to federal agency attorneys and the need for absolute immunity was again recognized since "The loser in one forum will frequently seek another. . . . Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation. *Butz*, 438 U.S. 478, 512.

Just two years after *Imbler* the *Butz* Court again suggested that civil remedies were less significant since there are safeguards in judicial and quasi-judicial proceedings:

> "[S]afeguards built into the judicial process tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct.... Advocates are restrained not only by their professional obligations, but by the knowledge that their assertions will be contested by their adversaries in open court.... Because these features of the judicial process tend to enhance the reliability of information and the impartiality of the decisionmaking process, there is a less pressing need for individual suits to correct constitutional error."(*Butz*, 438 U.S. 478, 512)

The *Imbler* and *Butz* cases involve claims by plaintiffs who claimed to have been prosecuted based upon improper motivations. In the case at bar, Maria Alves makes no such claim. She has never been prosecuted. Her complaint is based upon collateral damage from Walsh's prosecution of another person. Maria Alves' claim is not vexatious-she makes her claim to recover property that was wrongfully taken from her possession. She has never been provided with a forum to contest the seizure and forfeiture of her property. The safeguards of the judicial process, factors which

facilitated the policy to grant immunity to prosecutors like Walsh, were not available to Maria Alves. Maria Alves sought to intervene in the state forfeiture proceeding yet Walsh's office vigorously obstructed her motion to intervene and her timely request was denied by a judge of the Bristol County Superior Court. Maria Alves has never had the opportunity to contest the forfeiture and her only remedy is the type of civil action which is now pending. It should be noted that the motion judge who denied her effort to intervene made the following ruling:

> "Denied without prejudice to Maria Alves right to pursue a civil remedy."
> (Affidavit in Support of Opposition, filed herewith)

### Applicable Laws Relating to Forfeiture Issues

Under Massachusetts law it is well settled that a joint account owner has standing to challenge a forfeiture claim. *United States v. U.S. Currency, $81,000.00*, 189 F.3d 28, (First Circuit, 1999).

Maria Alves, as a joint owner, was constitutionally and statutorily entitled to be notified of the forfeiture motion and she had a right to appear and defend against the forfeiture claim. The forfeiture statute imposes an obligation on Walsh to notify Maria Alves of the forfeiture claim:

> "In all such suits where the property is claimed by any person, other than the commonwealth, the commonwealth shall have the burden of proving to the court the existence of probable cause to institute the action, and any such claimant shall then have the burden of proving that the property is not forfeitable pursuant to subparagraph (3), (5), or (7) of said subsection (a). The owner of said conveyance or real property, or other person claiming thereunder shall have the burden of proof as to all exceptions set forth in subsections (c) and (i). <u>The court shall order the commonwealth to give notice by certified or registered mail to the owner of said</u> conveyance, real property, <u>moneys or other things of value and to such other persons as appear to have an interest therein</u>…" (Emphasis added) *G.L., C94C, §47(d)*.

11

Walsh had two means to obtain forfeiture of the accounts:

"[Chapter 94C, §47] contemplates two methods by which forfeiture proceedings may be initiated by the Commonwealth: either by petition in the nature of a proceeding in rem filed in the Superior Court, G. L. c. 94C, § 47 (*d*), or, as happened here, by motion filed in a related criminal proceeding, G. L. c. 94C, § 47 (*b*).... A forfeiture proceeding initiated by motion filed in a related criminal proceeding is outside the scope of the criminal matter and constitutes a civil proceeding." *Commonwealth v. Brown*, 426 Mass. 475, 480 (1998).

The forfeiture motion filed by Walsh constituted an in rem proceeding regardless of the fact that the forfeiture was procured through a motion in the attendant criminal proceeding. *Brown,* 426 Mass. 475, 483.

In addition to the fact that Maria Alves was not provided with an opportunity to participate in the forfeiture proceeding there is an issue involving the Bristol County Superior Court's jurisdiction to even rule on any matter involving the deposit accounts. It is well settled that a valid seizure of the res is a prerequisite to the initiation of an in rem civil forfeiture proceeding. "No Massachusetts statute prescribes judicial control over property that was not seized pursuant to a warrant." *Commonwealth v. Rufo*, 429 Mass. 380, 383 (1999), See also: *Republic National Bank v. United States*, 506 U.S. 80 (1992). Prior to the institution of any forfeiture proceeding against the deposit accounts Walsh was required to actually seize or secure the accounts or secure them through attachment or trustee process. Simply seizing the documents which constituted evidence of the accounts upon the execution of the warrant was not a seizure in any sense of the requirements for of the law. If Maria Alves withdrew the moneys from the accounts at any time after the execution of the warrant and prior to the time Walsh persuaded the Bristol County Savings Bank to pay-over the money to his office then Walsh's efforts to

12

obtain the money would have failed. There was no judicial process, writ or other impediment which prevented Maria Alves from accessing the moneys in the account during this time period.

## Concise Statement of Material Facts

In 1998 Maria Alves (Maria) owed a tax debt to the Massachusetts Department of Revenue (DOR). Maria made an agreement with the DOR to pay-back the debt in installments over a period of years. At that time she was advised by a representative of DOR that regardless of the installment agreement if there was a bank account listed in Maria's name and social security number the account would be subject to seizure by the DOR. The representative advised Maria that she could hold her money in an account under the name and social security number of another individual, while she paid her installment debt, and the money would not be seized.

Maria then opened a pass book account in the Bristol County Savings Bank in her name and the name of her son, Jason Alves (Jason). All moneys deposited to this account were Maria's property and Jason's name and social security number were listed on the account for convenience purposes only. On December 18, 2000, a withdrawal of $5,000.00 was made from the pass book account and was deposited to a 1 year certificate of deposit account in Jason's name. The money in this certificate of deposit was Maria's property and since she was continuing her payments on the installment agreement with the DOR the money was held in Jason's name for convenience purposes only.

In January of 2002, Officers from the Fall River Police Department were investigating Maria's son, Jay Lee Alves (Jay Lee), for illegal drug activity. Jay Lee subsequently became the target of a search and seizure warrant obtained by the Fall River

13

police officers. Jason Alves was an occupant of Jay Lee's apartment but Jason was not a target of the search. When the officers executed the warrant they seized drugs and property. Two of the items seized from Jason's bedroom were listed on the officer's return as: "1 Bank Book" and "1 Certificate of deposit". The bank book and certificate of deposit were only evidence of accounts at the Bristol County Savings Bank. The documents had no tangible or intrinsic value and did not constitute negotiable instruments. The pass book displayed a deposit of approximately $16,910.97 and the certificate of deposit displayed a deposit of $5,000.00.

Criminal charges were thereafter filed against Jay Lee and Jason. There are no allegations that Maria was involved in or had knowledge of the illegal drug activities of Jay Lee or Jason.

After the Bristol County Savings Bank documents were seized the officers took no further action to seize, attach, trustee process or otherwise secure the depositary accounts at the Bristol County Savings Bank. No judicial action or G.L., C. 94C, §47(d) in rem forfeiture proceeding was filed against the deposit accounts.

Jay Lee and Jason subsequently entered pleas of guilt to criminal indictments brought after the execution of the warrant.

On May 12, 2003, 48 days after the conclusion of the criminal proceeding against Jason, Walsh filed a motion to forfeit property (hereafter, the "Motion", Complaint, Exhibit A) seized in connection with the search warrant. The Motion was filed in the criminal proceeding pursuant to the provisions of G.L., C 94C, §47(b). No notice of this Motion was provided to Maria. No judicial process, summons, writ, order of notice or copy of the Motion was served upon Maria even though Maria was listed in the body of

14

the Motion as an owner of the pass book. The Bristol County Savings Bank was not served with any judicial process, summons, writ, order of notice or copy of the Motion in connection with the Motion.

The Motion was called for hearing by Walsh on May 23, 2003. No opposition was filed and no one appeared to contest the motion; Jason was in jail at the time of the hearing and he was not habed to appear at the hearing. The Clerk's records indicate that the judge was concerned with whether Jason had notice of the hearing and the Clerk's note indicates that telephone calls were made to the attorneys for Jay Lee and Jason to inquire about any opposition. There is no information available as to whether the Clerk spoke with the attorneys but the record displays that no opposition to the Motion was filed. Maria Alves has never spoken with Jay Lee's or Jason's attorneys and neither attorney represented her interest in any matter at any time.

In connection with the Motion, a judge of the Bristol County Superior Court entered an order of forfeiture on June 5, 2003. The forfeiture order stated:

> "the sum of $35,858.97 in United States currency and the jewelry listed on the sheet annexed hereto and incorporated herein shall be forfeited to the Commonwealth of Massachusetts and distributed by the Bristol County District Attorney in accordance with the provisions of General Laws, Chapter 94C, §47(d)" (Order of Forfeiture Cash and Property, Complaint, Exhibit B)

The forfeiture order did not contain a sheet listing the jewelry. The order did not list the accounts at the Bristol County Savings Bank and there is no reference that any accounts at the Bristol County Savings Bank are forfeited pursuant to the Order.

On June 12, 2003, counsel for Maria made inquiry of the Assistant District Attorney in charge of forfeitures for Walsh's office to determine whether Walsh would attempt to forfeit Maria's interest in the accounts and whether the claim for forfeiture

15

could be released on the basis that Maria was an innocent owner. As a result of this inquiry Maria began collecting the documentation to prove the money in the accounts were her property and were held in Jason's name for convenience purposes only. On July 31, 2003, a written request for the release of the forfeiture claim along with Maria's tax records, DOR materials and the Bristol County Savings Bank records were submitted to Walsh's assistant in charge of forfeitures (Complaint, Exhibit E). No one from Walsh's office made known to Maria the fact that the Order which entered on June 5, 2003 would be used by Walsh to obtain the proceeds of the accounts from the Bristol County Savings Bank.

At the present time it has not been discovered how Walsh's office was able to obtain the moneys on deposit in the accounts without a specific judicial writ or process or what influence might have been applied to obtain the proceeds but the bank records display that on August 25, 2003, the Bristol County Savings Bank issued two checks to Walsh's office (Complaint, Exhibit C). These checks represented the total amounts in the deposit accounts. Walsh provided no notice to Maria that moneys would be taken from the two accounts.

After Walsh obtained the proceeds from the accounts he filed a Motion to Amend Order of Forfeiture to include the additional sums of $382.70 and $516.33, purportedly representing the interest earned on the accounts during the pendency of the proceedings (Complaint, Exhibit D). No notice of the Motion to Amend was provided to Maria. At a time after this motion was allowed Maria discovered that Walsh used the June 5, 2003 order to obtain the account proceeds.

When Maria discovered her accounts had been taken by Walsh she filed a Motion to Vacate the Forfeiture Order as well as a Motion to Intervene. Walsh vigorously opposed Maria's effort to obtain a hearing on her innocent owner claim. On February 23, 2004 these motions were denied by the Bristol County Superior Court. A motion judge's notation on the Motion to Vacate reads: "Denied without prejudice to Maria Alves right to pursue a civil remedy." Maria Alves filed the present action as her civil remedy.

Specific Functions for which Walsh Cannot Claim Immunity

Regardless of any prior actions, on August 25, 2003 Walsh obtained Maria Alves' moneys from the Bristol County Savings Bank in violation of Maria's constitutional rights. Walsh's advocacy role had stopped at the courthouse and his method of obtaining the moneys from the accounts outside of court involved functions involving his administrative duties. The Order of Forfeiture obtained by Walsh on June 5, 2003 involved only a forfeiture of Jason Alves' interest in the accounts- presuming that the Bristol County Superior Court had jurisdiction over the accounts. If Maria Alves was able to participate in the Bristol County Superior Court forfeiture motion she could have made known to the Court that there was no jurisdiction over the accounts.

Putting aside the jurisdiction issue, it remains clear that there was no valid forfeiture order that could be served upon the Bristol County Savings Bank to enable Walsh to access the accounts. The June 5, 2003 Order stated that cash and jewelry were the subject of the order. Bank accounts are not cash. Nothing is stated in the order about any bank account and there is no legal means for Walsh or the Bank to incorporate

extrinsic facts to allow an interpretation of the order to claim that the moneys deposited in the accounts were the subject of the forfeiture order.

Like the prosecutor who was denied absolute immunity for post judicial acts in the *Schrob*, Walsh is not entitled to absolute immunity for his acts involved in the presentment of an order of forfeiture which had no validity with respect to Maria Alves' property rights in the accounts at the Bank. Under color of law Walsh used the June 5, 2003 Order to unconstitutionally deprive Maria Alves of her property. Qualified immunity is also unavailable to Walsh in this instance since a reasonably trained prosecutor would know that Maria Alves was entitled to notice and an opportunity to defend the removal of the money from the accounts. Walsh knew she was an owner; he listed her as an owner in the forfeiture Motion.

Walsh had no probable cause to seize the bank accounts from Maria Alves therefore he could not possibly act as an advocate for the Commonwealth of Massachusetts with respect to any forfeiture that could be asserted against Maria Alves' interest in the accounts. *Buckley,* 509 U.S. 259, 274.

Whether or not Walsh provided advice to the Bank to release the moneys in the accounts on the basis of the defective order remains an issue to be explored in discovery and may constitute an additional ground for relief.

Walsh is also liable for exceeding the scope of his duties. The due process rights of innocent individuals must be recognized and respected. Prosecutors do not have discretion to judge the validity of an innocent owner's claim to property sought to be forfeited in a judicial proceeding, that role is obviously for a court. G.L., C. 94C, §47D

provides Walsh with a clear and unequivocal mandate that those who have an interest in property sought to be forfeited are to be given notice and an opportunity to defend against forfeiture. In opposing Maria's motions to vacate the forfeiture order and to intervene in the motion for forfeiture Walsh stated:

> "The Commonwealth's obligation is to notify the legal owners of the property at issue for forfeiture. The Commonwealth is not obligated to speculate as to rightful owner of monies when it provides notice of a forfeiture motion." (Paragraph 8, Commonwealth's Opposition to Maria Alves' Motion to Vacate Forfeiture Order.)

This requirement is not something which Walsh can vary with any discretion. Since Walsh has acted outside of the scope of his duty he is not entitled to any form of immunity. The Supreme Judicial Court of Massachusetts has (in a §1983 claim) interpreted an assistant district attorney's liability for acts committed outside of his scope of discretion. In *Jordan v. Sinsheimer*, 403 Mass 586 (1988) it was held that "[a]n obligation to carry out a clear court order involves no exercise of discretion." (*Jordan*, 408 Mass. 586, 589) If the assistant had any dilemma about the requirements of the order he should have appealed the order or sought to change it. In the case at bar, if Walsh had any dilemma about whether or not to respect Maria Alves' property rights he should have brought those issues to the attention of a court. Similar to the result imposed upon the assistant district attorney in *Jordan*, Walsh's failure to perform the requirements of these official duties strips him of his entitlement to immunity. Also, involved here is Walsh's investigation of the ownership of the accounts. Investigative functions are not cloaked with the protections of absolute immunity. *Imbler*, supra.

Finally, Walsh has a duty to train and supervise his assistants. Accepting for the moment the fact that he and his assistants breached their duties with respect to Maria Alves' property rights, a focus is made upon whether or not a breach of this type of duty has occurred at a prior time in Walsh's office. In 1996, during a criminal proceeding against a defendant by the name of John Oliveira, one of Walsh's assistants filed a motion to forfeit a vehicle that was not owned by John Oliveira. The forfeiture resulted in a deprivation of property to the named owner. The owner filed a civil action for damages and after what appears to be a long and costly period of litigation and appeal, wherein the owner was never allowed to contest the forfeiture, the owner has been permanently deprived of her property. Walsh's ability to carry out the functions of his office- to train and supervise his assistants- is a function of an administrative nature, not of advocacy. There is no entitlement to immunity if Walsh allows untrained assistants to carry out the responsibilities of his office imposed by Massachusetts statutes and the Constitution of the United States. For the foregoing reasons Walsh's motion to dismiss should be denied.

## REQUEST FOR ORAL ARGUMENT

Maria Alves requests the opportunity to provide oral argument.

Maria Alves
By her attorney,

_____
Brian J. Sullivan, Esq.
10 Purchase Street, Fifth Floor
Fall River, Massachusetts 02720
BBO#484990) (508) 679-7998

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served upon the attorneys of record for the parties by mail on May 2, 2005.

_____
Brian J. Sullivan